UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: NUMOTION DATA INCIDENT LITIGATION | Case No. 3:24-cv-00545<br><br>Judge Aleta A. Trauger |
| JENNIFER SYLVERSTER, JASON PEFFLEY, and JAMES FORSYTHE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED SEATING AND MOBILITY, LLC d/b/a NUMOTION,<br><br>    Defendant. | Case No. 3:25-cv-00469<br><br>Judge Aleta A. Trauger |

## DECLARATION OF J. GERARD STRANCH IV IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT AND FOR PLAINTIFFS' ATTORNEYS' FEES AND SERVICE AWARDS

I, J. Gerard Stranch, IV, am over the age of eighteen years. I offer this declaration in my capacity as one of the attorneys for Plaintiffs Shaun Ducrepin and Dulcie Walker ("Numotion I Plaintiffs"), as well as Jennifer Sylvester, Jason Peffley, James Forsythe, George Barron, Marie Guerrero, Cathy Goguen, and Jason Tapia ("Numotion II Plaintiffs") (collectively "Plaintiffs"), in the above-styled action, in support of the Unopposed Motion for Preliminary Approval of the proposed Class Settlement with Defendant United Seating and Mobility, LLC d/b/a Numotion ("Numotion" or "Defendant"). I have personal knowledge of the facts recited in this declaration, and if called upon to testify to the truth of the statements below, I could and would do so.

1. I am a licensed attorney in private practice in the state of Tennessee. The law firm I work for is Stranch, Jennings & Garvey, PLLC.

2. This case arises from a Data Security Incidents on Defendant's information systems in which cybercriminals may have accessed the sensitive personally identifiable information

1

("PII") and protected health information ("PHI") of the putative class members. Plaintiffs allege that Defendant failed to adequately protect Plaintiffs and the Class Members' sensitive data and are liable to the Plaintiffs and the Class for the harms caused by Defendant's failures.

3. The proposed Class is made up of about one million individuals, who meet the Class definition: all living persons who received notice of the Data Incidents," where "Data Incidents" means the March 2024 Data Incident and the September 2024 Data Incident collectively.

4. On July 24, 2024, the Court appointed myself, J. Gerard Stranch, IV as interim Class Counsel for the Numotion I Action.

5. On July, 15, 2024, the Numotion I Plaintiffs filed a consolidated complaint for the Numotion I action.

6. In response, on August 14, 2024, Defendant filed a motion to dismiss the Numotion I Action, which the court later granted in part and denied in part.

7. On May 20, 2025, the Court appointed myself, J. Gerard Stranch, IV as interim Class Counsel for the Numotion II Action.

8. On June 18, 2025, Plaintiffs filed a consolidated complaint for the Numotion II Action.

9. In March 2025, the Parties discussed the exchange of informal discovery in advance of potential settlement negotiations, which was sufficient to understand the positions of the Parties, the makeup of the class, and to empower Counsel to make a settlement demand.

10. In the months that followed, the Parties exchanged informal discovery and then engaged in arms'-length mediation with magistrate Judge Dian Welsh. The mediation occurred on July 2, 2025.

11. The mediation was a success and resulted in the Settlement Agreement proposed here and is a Settlement that Class Counsel believes strongly in given the data at issue in the case, the extensive interviews with Plaintiffs, Counsel's case law research, the Court's order on the motion to dismiss, and based on Counsel's significant experience and understanding of data breach litigation generally. Following the mediation, the Parties drafted the proposed Settlement Agreement, worked together to finalize negotiations regarding particular language and details, and approved the proposed Settlement Agreement before the Court.

12. This Class Settlement was reached after significant research and investigation into the relevant facts and applicable law, including all relevant documents and data, and is the result of vigorous arms'-length negotiations between the Parties. Plaintiffs have diligently prosecuted this action on behalf of the Class and there is no evidence of any collusion among the Parties, nor could there be in this case.

13. The Settlement provides significant relief to the Settlement Class Members, treats all class members equally, and allows all members to sign up for the benefits provided for in the settlement or seek exclusion if the benefits do not match their individual injuries.

14. The Settlement also serves the public interest by providing redress for privacy violations, which encourages companies to invest in appropriate cybersecurity measures to prevent future privacy harms.

15. Plaintiffs have no conflict with other class members and have demonstrated that they are well-suited to represent the Settlement Class. They have been involved from the beginning—researching and choosing Class Counsel with vast experience in data breach litigation—and have participated in the matter whenever needed, including by providing information necessary to draft the complaint, by participating in subsequent litigation needs and

settlement discussions, and by providing significant documents and engaging in interviews with Class Counsel. Plaintiffs here kept in contact with Counsel and were at all times available for calls or emails to discuss the case, including regarding the settlement and its terms. Indeed, Plaintiffs put their names and reputations into the public record to secure this result for the Class, which would not have been possible without their efforts.

16. For their efforts, Counsel negotiated $2,500 Service Awards for each Class Representative, which is in line with similar such awards in cases that require involvement from the Class Representatives.

17. Plaintiffs and Class Counsel are fully aware of the inherent risks, expenses, complexity, and delays associated with data breach litigation. These cases often require significant technological knowledge and testimony to litigate these matters, and these cases often require expensive expert witnesses—commonly charging $600 or more an hour. Courts still struggle with how to analyze these claims and often come to inconsistent conclusions, adding to the complexity of data breach cases.

18. The result contained in the Settlement Agreement is particularly favorable to the Class given the risks of continued litigation. Although Plaintiffs and Class Counsel strongly believe in the merits of the claims asserted in the action and that Plaintiffs would prevail at trial, they are aware of the serious risks associated with any litigation, especially litigation of this complexity, including questions of causation, class certification, and the potential for lengthy appeals—questions that can take years to litigation in order to resolve. This Settlement avoids those risks while providing meaningful, tangible, and near-immediate relief to Class Members. The result unquestionably provides a favorable result to Class Members and should be approved.

19. Class Counsel are well qualified to represent the Settlement Class, as they possess

significant experience leading the prosecution of complex class action matters, including hundreds of data breach class actions all over the country. Class Counsel's significant experience has afforded them and the attorneys on the firm's data breach teams' deep knowledge of the claims and defense common in data breach litigation. Class Counsel has ample resources to prosecute this action and never relies on outside funding. Class Counsel has a wealth of experience litigating and settling cases of this type and have diligently and efficiently investigated and prosecuted this action, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the Settlement Agreement for the benefit of all Class Members.

20. The Notice program comports with Due Process and provided the best practicable method to reach the potential class members and is in line with other class action notice programs that have been approved by various other courts around the country in similarly matters.

21. All notice documents were written in plain language, such that they were readily understandable to the Settlement Class Members and summarized the Parties' positions in the litigation, the terms of the Settlement, instructions on how to object and opt-out from the Settlement, the claims process, the requested attorneys' fees and costs, the requested Service Awards, and the time, date, and place of the Final Approval Hearing.

22. The Settlement is structured as a hybrid claim-made and common fund settlement. The Defendant will pay $4,000,000 into a non-revisionary common fund, and the Defendant will also pay claims for documented out-of-pocket expenses up to $15,000 per Class Member. Additionally, all Class members will automatically be entitled to receive two years of credit monitoring, which will be funded as part of the claims-made process separate and apart from the common fund.

23. The Settlement's hybrid structure provides participating class members with

5

additional benefits. Thus, the Settlement ensures significant relief, while also providing a compromise between the Parties such that the settlement can work for both sides.

24. As of February 13, 2026, 1,670 Class Members had submitted claims for Medical Monitoring. Further, as of February 13, 2026, Class Members have claimed $303,332.56 in expense reimbursement, although these claims have not yet been validated by the Settlement Administrator. Therefore, the value of the claims forms received as of February 13, 2026—with a month left in the claims period—is equal to $142,139,126.76.[1]

25. The Parties negotiated Plaintiffs' attorneys' fee award of $2,666,333.33 at the mediation, which equates to Class Counsel's request for $1,333,333.33 in attorneys' fees and costs to be paid from the Settlement Fund, and an additional $1,333,000 attorneys' fees and costs to be paid separate and apart from Defendant as part of the claims-made portion of the Settlement.

26. Class Counsel undertook representation in this case on a contingency basis, with no guarantee of success or renumeration, and with significant risk of nonpayment or underpayment. Fees were not guaranteed, as the retainer agreements Counsel have with Plaintiffs did not provide for fees apart from those earned on a contingent basis, and in the case of class settlement, approved by the court.

27. The fees negotiated here are in line with typical fees awarded in data breach litigation, and the negotiations for said fees only took place after the Parties had concluded negotiations on the material economic terms of the benefits that Plaintiffs and the Class would receive.

---

[1] The value of the Credit Monitoring ($141,316,758.20 = $215.76 for 2 years of CyEx Identity Defense Plan * 654,972 Class Members) + the value of the Medical Monitoring ($519,096 = $310.80 for 2 years of CyEx Medical Shield Pro * 1,670 claims) + $303,332.56 in expense reimbursement.

6

28. Though Plaintiffs have agreed to settle this matter, such a decision was made in light of the risk, complexity, expense, and delay of prolonged litigation. Plaintiffs and Class Counsel remain convinced that they would prevail at trial and have vigorously prosecuted this action with a trial in mind since the beginning of the case. Notwithstanding the strength of the case, the settlement here treats all Settlement Class Members equally and is fair, reasonable, and adequate is on balance is in the best interests of the class—especially because they now need not wait years for relief.

29. Class Counsel collected billing and expense that each firm has incurred to date.

30. As of the execution of this declaration, Plaintiffs had incurred unreimbursed litigation expenses of $19,101.77 in ordinary litigation costs, such as filing and service fees, PHV costs, and mediation expenses.

31. Moreover, Plaintiffs' counsel have incurred $674,744.75 in attorneys' fees based on the rates ordinarily charged by each individual and firm. Class Counsel ensured work was done efficiently.

32. When combined with the expenses incurred, the fees incurred—which will increase through final approval and completion of the settlement post final approval—provide a lodestar multiplier of 3.84.

I make the above statements under penalty of perjury under the laws of the State of Tennessee. Respectfully submitted and signed this 16th day of December 2026, at Nashville, Tennessee.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2026, the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will serve on all counsel of record.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
