# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: NUMOTION DATA INCIDENT LITIGATION | Case No. 3:24-cv-00545 |
| | Judge Aleta A. Trauger |
| JENNIFER SYLVERSTER, JASON PEFFLEY, and JAMES FORSYTHE, individually and on behalf of all others similarly situated, <br><br>     Plaintiffs, <br><br> v. <br><br> UNITED SEATING AND MOBILITY, LLC d/b/a NUMOTION, <br><br>     Defendant. | Case No. 3:25-cv-00469 <br><br> Judge Aleta A. Trauger |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL, ATTORNEYS' FEES, AND SERVICE AWARDS

Plaintiffs Shaun Ducrepin and Dulcie Walker ("Numotion I Plaintiffs"), as well as Jennifer Sylvester, Jason Peffley, James Forsythe, George Barron, Marie Guerrero, Cathy Goguen, and Jason Tapia ("Numotion II Plaintiffs") (collectively "Plaintiffs") individually and on behalf of all others similarly situated ("Class Members" or "putative Class Members"), respectfully submits this memorandum in support of their motion for final approval of the Class Settlement Agreement and for an award of their reasonable attorneys' fees and expenses and Service Awards. Defendant has reviewed this motion and does not oppose the relief requested herein.

### I.    Background

In the interest of brevity and efficiency Plaintiffs incorporate the Background outlined in the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Dkt. 45.

## II.    Settlement Terms

The Parties have agreed to settle this matter on behalf of a Class defined as: "all living persons who received notice of the Data Incidents," where "Data Incidents" means the March 2024 Data Incident and the September 2024 Data Incident collectively." S.A. ¶ 76. Excluded from the Class definition are: (1) Defendant and its officers and directors; (2) all Persons who submits a timely and valid opt out from the Settlement Class; (3) the Court the Judge's immediate family, and Court staff; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrences of the Data Incidents, or who pleads *nolo contendere* to any such charge." *Id.*

### a.    Settlement Benefits

The Settlement provides significant relief to participating Class Members. The Settlement employs both a Settlement Fund and additional Claims-Made Benefits.

First, Defendant will pay $4,000,000.00 into a non-revisionary common fund ("Settlement Fund"). Following the payment of any service awards, attorneys' fees, expenses, reasonable costs of Settlement Administration, and CAFA notice, the Settlement Fund will provide Class Members with cash payments upon request through a valid claim form. These cash payments will be increased or decreased on a *pro rata* basis to exhaust the Settlement Fund. S.A. ¶¶ 79, 88. 91.

Second, Defendant will also pay claims for documented out-of-pocket expenses up to $15,000 per Class Member ("Claims-Made Benefits"). *Id.* ¶ 89. Class Members will have until 15 days before the initial scheduled Final Approval Hearing to submit a claim. *Id.* ¶ 32. Moreover, all Class Members will automatically be entitled to receive two years of CyEx's Identity Defense Plus credit monitoring product, which will be funded as part of the claims-made process separate and apart from the Settlement Fund. *Id.* ¶ 92. Further, Social Security Settlement Class Members—that

is, Settlement Class Members whose Social Security numbers may have been involved in the Data Incidents—may submit claims for two years of CyEx's Medical Shield Pro medical account monitoring. *Id.* ¶ 51, 88, 90.

### b. Service Awards and Attorneys' Fees

As the Class representatives, the Settlement Agreement provides that each should receive $2,500 for their service to the class. If approved, the Service Awards for the Class Representatives would be paid out of the Settlement Fund, but the proposed Settlement is not conditioned upon the Court's award of any service awards. *Id.* ¶ 126. Further, under the terms of the proposed Settlement, Plaintiffs may file a motion for attorney's fees and cost up to $1,333,333.33, to be paid from the Settlement Fund, and $1,333,000 attorneys' fees and costs to be paid by Defendant as part of the claims-made portion of the Settlement Agreement—for a total of $2,666,333.33. *Id.* ¶ 127.

### III. The Notice Program Comports with Due Process

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class

members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007).

Due Process does not require that every class member receive actual notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); FED. JUDICIAL CTR., JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (holding that the notice plan was "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class). The notice program here meets this standard, as it provided notice to 97.41% of the Settlement Class. Decl. of Andrea Dudinsky of Kroll Settlement Administration LLC In Connection with Final Approval of Settlement ("Admin. Decl.") ¶ 13.

Indeed, the Court approved the proposed notice program, finding it met the requirements of Rule 23 and Due Process. Dkt. 51. The notice program has now been fully carried out by the Settlement Administrator, Kroll Settlement Administration, LLC. On December 17, 2025, Kroll received a data file from Defendant containing 660,717 records. Admin. Decl. ¶ 8. After deduplication, Kroll identified 654,972 unique Class Members. *Id.* Of those individuals, Kroll sent email notice to 330,117 Class Members on January 2, 2026. *Id.* ¶ 9. Of those, 51,915 were not delivered, so Kroll included them in the Postcard mailing list. *Id.* ¶¶ 9–10. On January 15, 2026, Kroll mailed the Postcard Notice to all Class Members who whom a mailing address was known, including the individuals to whom email notice was unsuccessful. *Id.* ¶ 10. This totaled 376,533 individuals. *Id.* After performing additional advanced searches, on February 10, 2026, Kroll resent the Postcard Notice to updated addresses to 39,930 individuals. *Id.* ¶ 12.

4

In addition, Kroll setup a website and toll-free telephone number to publish details of the proposed Settlement and answer Class Members' frequently asked questions. On December 15, 2025, Kroll established a settlement, which went live on December 30, 2025. *Id.* ¶ 7. The website further published details of the proposed Settlement, including all important dates and information, answers to frequently asked questions, contact information for Kroll, and copies of all important documents, including notice materials, court filings, and the Settlement Agreement. *Id.* Kroll also established a toll-free telephone number on November 14, 2025, through which Class Members could receive the answers to frequently asked questions. *Id.* ¶ 6. The telephone line resulted in 2,520 calls. *Id.* After these activities, the Notice Program resulted in a notice reach of 97.41%, easily surpassing the expected 70% notice reach minimum. *Id.* ¶ 13. These notices were performed using materials written in plain language that should be easily understood by Class Members. Admin. Decl. Exs. C–F.

## IV. The Settlement Class Should be Certified

### a. The Class meets the requirements of Rule 23(a)

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). "In most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). After deduplication of the class list, the ultimate number of individuals in the Class is 654,972 people, Admin. Decl. ¶ 8, satisfying the numerosity requirement for purposes of settlement. The Class is also ascertainable, as Defendant knows the identity of each of these Class Members and provided that list to Kroll. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member").

**Commonality.** Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a classwide resolution. Fed. R. Civ. P. 23(a)(2). It may be indicated when the claims all "depend upon a common contention," with a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiffs' claims turn on the adequacy of Defendant's data security measures. Evidence to resolve that claim does not vary among Class Members, and so can be fairly resolved, for purposes of settlement, for the entire Class at once.

**Typicality.** A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs and the Class Members satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). The "court must inquire whether the interests of the named plaintiff are aligned with those of the represented group, such that in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. 2020). Plaintiffs allege that each Class Member had their Private Information compromised in the Data Incidents and were thus impacted by the

same allegedly inadequate data security that Plaintiffs allege harmed the rest of the Class. Thus, Plaintiffs' pursuit of their own claims necessarily advances the interests of the Class.

*Adequacy.* Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626. Plaintiffs here have no conflict with other Class Members, have participated actively, and are represented by attorneys experienced in class actions, including data breach cases. Declaration of J. Gerard Stranch, IV in Support of Plaintiffs' Motion for Final Approval ¶ 15 ("Stranch Decl."). Class Counsel regularly engages in consumer privacy cases, has the resources necessary to prosecute this case, and has frequently been appointed lead class counsel in data breach cases and other consumer class actions. *Id.* ¶ 19. Class Counsel has devoted substantial resources to this action: investigating Plaintiffs' claims; obtaining and analyzing Plaintiffs' circumstances; analyzing the scope of the Data Incidents; participating in mediation; and, ultimately, negotiating a Settlement that provides meaningful relief for the Class in the face of substantial litigation risks. *Id.* ¶¶ 12–14, 17–18. Class Counsel has vigorously prosecuted this case and will work diligently for the Class throughout the administration process.

### b. The Class meets the requirements of Rule 23(b)

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the

controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."). The proposed Class satisfies the above.

Common questions of law and fact also predominate. Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* Though similar to the commonality requirement of Rule 23(a), Rule 23(b)(3) "contains the more stringent requirement that common issues predominate over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). Predominance is met if a single factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Data breach cases present questions of law and fact central to liability that predominate over any individual issues. Defendant's alleged course of conduct was uniform across the Class, so the claims "will prevail or fail in unison." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013). Because classwide determination of this issue will be the same for all, predominance is satisfied.[1]

---

[1] *See also In re Hope Coll. Data Sec. Breach Litig.*, 2024 WL 2268559, at *2 (W.D. Mich. May 20, 2024) (holding that predominance was satisfied in connection with granting final approval to another data breach settlement because "common issues of fact and law predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.") (citing Fed. R. Civ. P. 23(b)(3)).

8

Moreover, a class action is the superior method to fairly, adequately, and efficiently adjudicate this matter. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Indeed, to "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable; the amount in dispute per person is too small to support individual cases. So, the Court should certify the Class for the purpose of this Settlement pursuant to Rule 23(b)(3), which Defendant does not oppose.

## V. The Settlement Should Be Granted Final Approval

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008). Rule 23 of the Federal Rules of Civil Procedure was amended in 2018 to front-load the class action settlement process to the preliminary approval stage. *See Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 1231257, at *4 (D.N.J. Mar. 21, 2024) ("At the preliminary approval stage, the Court is required to peer ahead, and to ask whether it is 'likely' to ultimately approve the proposed settlement at the end-of-the-line fairness hearing.") (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have

adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### a. The Rule 23(e) factors weigh in favor of Final Approval

The Settlement easily satisfies the Rule 23(e)(2) factors. First, as explained, Plaintiffs and Class Counsel have adequately represented the Class and secured an excellent result. *See supra* § II(a). Second, the Settlement was negotiated at arms'-length, which included a neutral mediation with highly qualified and renowned mediator, the Honorable Diane Welsh (ret.), taking place after which the Parties had exchanged information sufficient to adequately assess the strengths and weaknesses of the case. S.A. ¶¶ 16–21. Third, the relief provided is clearly adequate when taking into account the factors listed in Rule 23. The Settlement provides a substantial recovery for the Settlement Class and does so without additional delay and the uncertainty of litigation in the form of a $4,000,000.00 Settlement Fund and additional benefits that can be claimed in addition to that fund (i.e., documented expense reimbursement up to $15,000, two years of CyEx's Identity

Defense Plus product, and two years of CyEx's Medical Shield product for those whose Social Security numbers were affected). *Id*. ¶¶ 87–92. Fourth, all Settlement Class Members are treated equally. Stranch. Decl. ¶¶ 13, 28. Each Settlement Class Member is eligible to make claims for reimbursement of their document out-of-pocket expenses or a pro rata cash payment, and two years of CyEx's Medical Shield Pro for the Social Security Class, with two years of CyEx's Identity Defense Plus automatically available. S.A. ¶¶ 87–92. Moreover, the Settlement makes these benefits available now, without the delay of prolonged litigation and the risk that Class Members would be left with nothing. Stranch Decl. ¶¶ 17–18. Furthermore, the fees negotiated here are in line with typical fees awarded in data breach litigation, with a one portion of the fees derived from a third of the common fund, and the second portion deriving from the benefits made available from the claims-made process without diminishing the value of those benefits. *Id*. ¶ 25.

Accordingly, the Rule 23(e) factors are satisfied in this proposed Settlement.

### b. The *UAW* factors weigh in favor of Final Approval

Factor 1: No risk of fraud or collusion: The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838. When, as here, a settlement was reached through arms'-length negotiations through an experienced mediator, there is no evidence of fraud or collusion. *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). The Settlement was obtained after a mediation with the Honorable Diane Welsh, a prominent mediator in the data breach class action space. Stranch Decl. ¶¶ 9–12. Thus, far from any evidence of collusion, the Settlement here is the

result of significant and hard-fought negotiations at arms'-length. This factor strongly supports approval.

Factor 2: Litigation through trial would be costly, complex, and time consuming: The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151 at *17. The same is true here. Data breach litigation is inherently complex, time consuming, and costly. It often requires technical expensive technical experts, and even after all these expenses needed to litigate these matters there may still be no recovery for the Settlement Class. Stranch Decl. ¶ 17. Absent this Settlement, the Parties would have to litigate through multiple risky expensive phases, including class certification, summary judgment, a trial, and appeals. This would take years to finally resolve and could end up with the same result obtained through this Settlement—or it could result in no recovery for the Class. Indeed, though no data breach class action has yet to reach a trial, privacy cases can often result in low per-class-member recoveries. For example, a jury in a recent privacy class action against Google awarded plaintiffs just under $425.7 million for nearly 100 million class members, equating to just over $4 per person. *Rodriguez v. Google LLC*, No. 3:20-cv-04688 (N.D. Cal.), at Dkt. 670.[2]

The Settlement, on the other hand, permits a prompt resolution of this Action on favorable terms that are fair, reasonable, and adequate to the Class. This result has been accomplished years earlier than if the case proceeded to judgment through trial and/or appeals and provides certainty while prolonged litigation does not and could result in defeat for the Class at summary judgment,

---

[2] *See also* David Thomas & Mike Scarcella, *Google Trial Ends with $425 Million Verdict After Cooley Inherits Privacy Case*, REUTERS (Sept. 4, 2025, at 1:26 PM), https://www.reuters.com/legal/litigation/google-trial-ends-with-425-million-verdict-after-cooley-inherits-privacy-case-2025-09-04.

at trial, or on appeal, or result in a jury award of the same or lesser recovery years down the road. Consequently, this *UAW* factor weighs in favor of final approval of the Settlement.

Factor 3: The Parties exchanged informal discovery during mediation: The third *UAW* Factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties exchanged informal information during the mediation process that was sufficient to empower Class Counsel to provide an informed demand and to negotiate this Settlement. Stranch Decl. ¶ 9–11. Class Counsel's experiences in similar matters, as well as the efforts made by counsel on both sides, confirm that they are and were sufficiently well apprised of the facts of this action and their respective cases to make an intelligent analysis of the Settlement.

Factor 4: Prolonged litigation brings significant risks: The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Should litigation continue, Defendant would almost certainly file a motion to dismiss, would contest class certification, and would eventually move for summary judgment. Though Plaintiffs and their counsel believe strongly in the merits of this Action, they cannot deny the inherent risks in data breach litigation. *See Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex.") (collecting cases). Moreover, at the time the settlement was reached in this case, the Court had not certified a class, and the Parties anticipate that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing—potentially years down the line. Even if the Court did certify a Rule 23 class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing—thus exacerbating the expense and delay of prolonged litigation. In Class Counsel's experience, these additional steps in litigation can take years to resolve. Stranch Decl. ¶ 18. The proposed Settlement

eliminates this risk, expense, and delay and awards Class Members payment promptly. This factor favors final approval.

Factor 5: Class Counsel and the named Plaintiff support the Settlement: The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *18. Class Counsel and Plaintiffs support the Settlement. This Settlement is an excellent result for Class Members considering the risks of continuing to litigate. Stranch Decl. ¶¶ 13–14, 17–18. This factor thus also favors final approval.

Factor 6: The Reaction of absent Class Members is overwhelmingly positive: The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class settlements, a small number of opt outs and objections "are to be expected" and do not impact a settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Though the deadline to opt out or object is not until March 3, 2026, only five Class Members have requested exclusion to date, and no Class Member has objected. Admin. Decl. ¶¶ 17–18. This *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Moreover, given the size of the Class here, the fact that only five Class Members have requested exclusion is an indication of the settlement's fairness. *IUE- CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases); *see also In re Cendant Corp. Litig.*, 264

F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."). This factor weighs in favor of final approval.

Factor 7: The Settlement serves public interest: The seventh and final *UAW* factor is whether the Settlement supports "public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530. Further, when individual class members seek relatively low damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Though Defendant continues to deny liability, Class Counsel believes these cases serve the public interest, in addition to the public interest in settling litigation without further use of judicial resources. Indeed, Class Counsel strongly believes in pursuing redress for privacy violations, which further encourages companies to invest in the appropriate cybersecurity measures to prevent future privacy harms. Stranch Decl. ¶ 14. This factor therefore supports final approval.

## VI. The Court Should Affirm Its Appointments of Class Counsel and Class Representatives

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interest of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider: (1) proposed class counsel's work in identifying or investigating potential claims and defenses; (2) proposed counsel's experience in handling similar complex class actions, and the types of claims asserted in the case; (3) proposed class counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the proposed class. Rule 23(g)(1)(A)(i-iv); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:48 (6th ed.).

In its order preliminarily approving the Class Settlement, the Court conditionally appointed J. Gerard Stranch, IV as Class Counsel. Dkt. 51, at 3–4. The Court should affirm this conditional appointment. Mr. Stranch has successfully steered this matter through hard-fought negotiations and throughout this settlement approval process. Mr. Stranch has proven himself capable of representing the Class and producing significant results. Moreover, Mr. Stranch has significant experience in consumer class litigation and especially in privacy litigation. Stranch Decl. ¶ 19. Thus, the Court should affirm its appointment of Mr. Stranch as Class Counsel. Moreover, the Court should affirm its conditional appointment of Plaintiffs as Class Representatives. Plaintiffs have represented the Class admirably and have at all times assisted Counsel in prosecuting this matter as was necessary—as is evidenced by the outcome here. *Id.* ¶ 15. Thus, the Court should affirm their appointment as Class Representatives.

## VII. Class Counsel's Fee Request is Reasonable

In conjunction with final approval, the Court should approve Class Counsel's request for attorneys' fees to Class Counsel in the total amount of $2,666,333.33, which Defendant agreed not to oppose, as part of the proposed Settlement. S.A. ¶ 127. The percentage-of-the-benefits method is the most appropriate and efficient way of awarding fees, and the standard 33.33% market rate is appropriate here, however, counsel is requesting way less than 33.33% standard.

The Settlement proposed here is a hybrid structure with both a common fund and a claims-made process. This structure allows plaintiffs, who prefer common funds, and defendants, who prefer claims-made deals, to compromise and meet in the middle for a settlement that can work for both sides. Stranch Decl. ¶ 22–23. This hybrid settlement structure provides a common fund with a potential *pro rata* increase in cash payments while separately providing participating class members with additional benefits that do not reduce their cash payments from the common fund—

reimbursement for their documented economic harms, two years of automatically available credit monitoring and two years of additional medical account monitoring for those whose Social Security numbers may have been affected. *Id.*; S.A. ¶ 92. Under the terms of the Settlement, Defendant agreed that it will not oppose Class Counsel fee request of one third of the common fund, plus another $1,333,000 from the claims-made process.

### a. The Value of the Settlement

The Settlement provides for both a $4,000,000 common fund and an additional claims-made process with benefits paid separately by Defendant beyond the common fund. First, the $4,000,000.00 non-reversionary Settlement Fund will pay for *pro rata* cash payments to Class Members, Plaintiffs' Service Awards of $2,500 each, the costs incurred by Kroll for notice and claims administration, CAFA notice, and for the first payment of attorneys' fees. S.A. ¶ 79. Second, the Settlement provides for a claim-made process that makes available several benefits. Indeed, the credit monitoring and medical account monitoring alone makes $216,250,949 in benefits available.

Specifically, the claims-made portion of the Settlement will pay for three types of benefits to all class members. First, it funds two (2) years of CyEx Identity Defense Plus ("Credit Monitoring"). The enrollment codes for this product were automatically sent to all Class Members without them having to submit a claim form. S.A. ¶ 92. This subscription would cost Class Members $8.99 per month, or $215.76 per Class Member for the two-year subscription. Thus, the value to the Class of this benefit is $141,316,758.20 for 654,972 Class Members.[3] Second, it funds two (2) years of CyEx Medical Shield Pro ("Medical Monitoring") for Social Security Settlement Class Members on submission of a claim form. S.A. ¶ 90. The product would cost Class Members

---

[3] https://cyex.com/identity-defense.

$12.95 per month, or $310.80 for the two year subscription.[4] With 241,101 Class Members having their Social Security numbers affected (Admin Decl. ¶ 8), and thus eligible to receive this benefit, the value made available to the Class is $74,934,190.80. Third, it funds valid claims for Documented Out-of-Pocket Losses, not to exceed $15,000.00, for all expenses and losses associated with the Data Incidents for all Settlement Class Members (S.A. ¶ 89).

Thus, considering the value of Credit Monitoring and Medical Account Monitoring alone, the claims-made process presents at least a value of $216,250,949 even without considering that all Class Members may seek reimbursement for any expenses incurred because of the Data Incidents if they have receipts documenting such expenses. So, Class Counsel's fee request of $1,333,000.00 from the claims-made process, which Defendant does not oppose, and which does not reduce the benefits made available, amounts to less than 1% of the value of the benefits Class Members have the right to sign up for in addition to the cash payments from the common fund. Further, these funds are paid by the Defendant above and beyond the benefits provided to the Class.

Even if the Court only looked at the benefits to Class Members after all claims forms are received, the value is still nearly as significant. Indeed, the value of credit monitoring remains, as it is being automatically provided to Class Members without their having to submit a claim form. S.A. ¶ 87. Moreover, as of the February 13, 2026, 1,670 Class Members had submitted claims for Medical Account Monitoring. Stranch Decl. ¶ 24. Given the $310.80 value, this means Class Members have claimed $519,036 in Medical Account Monitoring notwithstanding that the deadline to submit claims is not until March 18, 2026.[5] Furthermore, Class Members have so far claimed $303,332.56 in expense reimbursement, though these claims have not yet been validated by the Settlement Administrator. *Id.* ¶ 24. Thus, the value with the claim forms received to date

---

[4] https://cyex.com/medical-shield.
[5] https://www.numotionsettlement.com/.

remains at least $142,139,126.76 with more than a month to go in the claims period.

### b. Plaintiffs' Fee Request is Reasonable under *Gascho*

Federal Rule of Civil Procedure 23(h) expressly authorizes courts in class action settlements to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the U.S. Supreme Court has observed, under the law, "lawyer[s] who recover[ ] a common fund . . . [are] entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). A district court has discretion to use either the percentage of the benefit method or the lodestar method to calculate attorneys' fees. *Id.* If a fee award is reasonable under one of these two methods, it is within the court's discretion, and the court is not required to "crosscheck" with the other method. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 282–83 (6th Cir. 2016).

The "trend" has been towards using the percentage of the benefit method in awarding attorneys' fees. *Rawlings*, 9 F.3d at 515. This method "more accurately reflects the results achieved." *Id.* at 516. It has "a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Id.* By contrast, "the lodestar method has been criticized for being too time-consuming of scarce judicial resources." *Id.* (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269–70 (D.C. Cir. 1993); *Court Awarded Attorneys' Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 250 (1985)). Under the lodestar method, "[d]istrict courts must pore over time sheets, arrive at a reasonable hourly rate, and

consider numerous factors in deciding whether to award a multiplier." *Id.* "With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.*

Indeed, "[i]t would not be appropriate for Class Counsel to receive a lower award because Settlement Class Members choose not to claim funds that are easily available to them." *Gokare v. Fed. Express Corp.*, 2013 WL 12094887, at *6 (W.D. Tenn. Nov. 22, 2013). "In calculating a percentage fee award in a class action involving a settlement fund, the Supreme Court has recognized 'that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole,' even if part of the fund reverts to the defendant." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 386 (E.D. Pa. 2019) (quoting *Boeing*, 444 U.S. at 478); *see also Boeing*, 444 U.S. at 480 (holding that the class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel"); *Drazen v. Godaddy.com, LLC*, 2020 WL 8254868, at *12 (S.D. Ala. Dec. 23, 2020) (citing *In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)). The common benefit doctrine is applied the same way to claims-made or partial claims-made settlements and is not limited by the number of individuals that ultimately make claims. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) ("[P]roperly understood a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant; indeed, the two types of settlements are fully synonymous.") (quoting 4 Newberg & Rubenstein on Class Actions § 13:7 (6th ed.)) (internal citations omitted).

"Empirical studies show that, regardless whether the percentage method or the lodestar

method is used, fee awards in class actions average around one-third of the recovery." *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000). "[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable" in complex litigation. *Ware*, 2020 WL 2441415, at \*16*; see also Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 2020 WL 3053468, at \*1 (M.D. Tenn. May 29, 2020) (awarding a one-third fee of $40 million from a $120 million settlement and noting that a one-third fee "is certainly within the range often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Cassell v. Vanderbilt Univ.*, 2019 WL 13160853, at \*1 (M.D. Tenn. Oct. 22, 2019) (awarding one-third fee and noting that amount is "common"); *Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 WL 6466398, at \*6 (W.D. Tenn. Oct. 4, 2023) (awarding fee of one-third of $43.5 million settlement) (citing *In re Skelaxin (Metaxalon) Antitrust Litig.*, 2014 WL 2946459, at \*1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of the settlement recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at \*8 (E.D. Tenn. May 17, 2013) (awarding one-third fee from $158.6 million settlement)); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at \*8 (S.D. Ohio Sept. 20, 2019) (finding that 33% in fees "is typical").

In data breach cases in particular, courts have found that an award of one-third "is customary and typical of like awards." *All. Ophthalmology, PLLC v. ECL Grp., LLC*, 2024 WL 3203226, at \*15 (M.D.N.C. June 27, 2024) (one-third fee in data breach settlement) (citing *Lamie v. LendingTree, LLC*, 2024 WL 811519, at \*2 (W.D.N.C. Feb. 27, 2024) (same); *Thomsen v. Morely Cos.*, 2023 WL 3437802, at \*2 (E.D. Mich. May 12, 2023) (awarding 33% and finding that amount to be "presumptively reasonable"); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at \*8 (E.D. Wis. Mar. 22, 2023) (overruling objector and awarding fee of one-third of gross settlement

fund and 41% of net settlement fund); *In re Novant Health, Inc.*, 2024 WL 3028443, at \*9 (M.D.N.C. June 17, 2024) (awarding class counsel fees of one-third of $6.6 million in data privacy settlement); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (approving one-third fee of over $29 million and noting that amount "is typical in other data privacy settlements"), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022).

Beyond the reasonableness of the percentage of the benefits, some courts consider six factors when determining the reasonableness of class action fees: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996). A court need not evaluate each factor, and, when a percentage is sought, attorney time is often not submitted. *See Ware v. CKF Enters., Inc.*, 2020 WL 2441415, at \*16 (E.D. Ky. May 12, 2020) (noting that class counsel did not provide time information but finding a one-third fee reasonable where the other factors favored that amount).

A fee of one third from the Settlement Fund ($1,333,333.33), plus what amounts to less than 1% of the value of the claims-made portion of the settlement ($1,333,000.00), paid separately by Defendant in addition to both funds, is appropriate here. First, the value of the benefit to the Settlement Class is significant—a $4,000,000.00 common fund—which will be used to provide cash payments to Settlement Class—and claims-made benefits, which Plaintiffs value at roughly $216,250,949. Moreover, the attorney fee payment from Defendant (as opposed to the payment from the common fund) is separate from, and does not diminish, either the claims-made benefits

or the $4,000,000.00 non-reversionary Settlement Fund. And Class Counsel achieved this substantial amount avoiding the risk and delay for the Class that would come with continued litigation. Second, Class Counsel took this litigation on a purely contingent fee basis, meaning they risked never recovering any fee for their time unless the litigation was successful. Stranch Decl. ¶ 26. *See e.g.*, *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *13 (E.D. Pa. Sept. 24, 2019) ("Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable.").

Third, society has a stake in rewarding attorneys who produce benefits in data breach cases because such suits serve not only to compensate victims but also to deter allegedly lax data security practices by other entities and to encourage entities to spend adequately on data security to prevent harm. Fourth, "courts have recognized that data breach class action cases are 'particularly risky, expensive, and complex.'" *Beasley v. TTEC Servs. Corp.*, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024) (quoting *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (collecting cases); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (collecting cases)). Further, counsel on both sides of this case are highly skilled in class actions, in general, and data breach class action, in particular. Stranch Decl. ¶ 17–19; *see* Declaration of J. Gerard Stranch, IV in Support of the Unopposed Motion for Preliminary Approval of the Class Settlement, Ex. A (Firm Resume). Moreover, Class Counsel have thus far received no objections.

Moreover, though the Court need not consider the time and expense incurred in the litigation, a lodestar cross-check places the multiplier squarely within the range approved. To date and not considering the additional work performed to submit this motion and future additional

work required to complete the claims process and close out this matter, Class Counsel and the various other firms assisting in this matter have incurred attorneys' fees of $674,744.75 and unreimbursed litigation expenses of $19,101.77. Stranch Decl. ¶¶ 30–31. That presents a lodestar multiplier of 3.84. *In re Cardinal Health Securities Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (finding lodestar multiplier of six reasonable as it "honors Lead Counsel's excellent recovery, considerable effort, and high quality of lawyering"); *Arp. V. Hohla v. Wyss Enters., LLC*, 2020 WL 6498956, at *7–8 (S.D. Ohio 2020) (collecting cases and noting multipliers ranging from 4.3 to 8.5 were found reasonable); *Bailey v. AK Steel Corp.*, 2008 WL 553764, at *2 (S.D. Ohio Feb. 28, 2008); *In re Chevrolet Bolt EV Battery Litig.*, 2025 WL 3708892, at * 13 (E.D. Mich. Dec. 22, 2025) (collecting cases with lodestars ranging from 3.6 to 8.74). Counsel expects the 3.84 multiplier to drop even lower as a result of briefing final approval, answering absent class member questions and concerns about the settlement and claims process, working with the Administrator to finalize the approvals for the expense reimbursement claims and to attend the final approval hearing.

Thus, the relevant factors support approving a payment of $2,666,333.33 in fees.

## VIII. Class Representatives' Service Awards are Reasonable

The Court should also approve a modest service award of $2,500 to each of the Class Representatives. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ross v. Jack Rabbit Servs., LLC*, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (internal quotations omitted). Such awards "encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case." *In re Anthem Data Breach Litig.*, 2018 WL 3960068, at *30 (N.D. Cal. Aug. 17, 2018). In determining whether

to approve service awards, courts in the Sixth Circuit have considered the actions taken by the Class Representatives on behalf of the proposed Class, and the time, effort, and risk incurred as a result of that representation. *Ross*, 2016 WL 7320890, at *5 (quotation omitted). As to amount, courts in the Sixth Circuit commonly award between $5,000 and $10,000 per representative. *See, e.g.*, *Salinas v. U.S. Xpress Enters., Inc.*, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000). That is in line with other circuits and with what empirical studies have observed. *See, e.g.*, *In re Anthem*, 2018 WL 3960068, at *31 (noting the "benchmark" in the Ninth Circuit is $5,000); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) ("courts in [the Eighth] [C]ircuit regularly grant service awards of $10,000 or greater"). *Scott v. Dart*, 99 F.4th 1076, 1087 (7th Cir. 2024) ("The most recent empirical study on incentive awards reviewed approximately 1,200 class actions from 2006 to 2011 and found that the median incentive award per named plaintiff was $5,250 (or $7,125 in 2023 dollars).") (citation omitted).

Here, the requested service award of $2,500 is relatively modest and is supported by the relevant factors. First, without the Class Representatives' willingness to reach out to counsel, provide relevant information, review the complaint, and approve the settlement, there would be no class action recovery at all. Second, the recovery obtained is substantial, as outlined above. Third, by putting their names on a class action in federal court, the Class Representatives necessarily exposed themselves to the reputational risk that thousands of people may one day know their names and that their data was breached, as well as the potential stigma of being flagged as

"litigious" during background or employment searches. Thus, the awards are appropriate.

## IX.     Conclusion

For these reasons, Plaintiffs respectfully request that the Court grant final approval to the Class Settlement Agreement. Moreover, Plaintiffs respectfully request that the Court (1) affirm the appointment of J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel, (2) affirm Plaintiffs as Class Representatives, (3) grant their motion for attorneys' fees and expenses, and (4) grant their request for Class Representative Service Awards.

Dated: February 16, 2026                        Respectfully submitted by,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 023045)
Grayson Wells (BPR 039658)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

***Attorneys for Plaintiff and the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2026, the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will serve on all counsel of record.

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (BPR 23045)